UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                     :

SAMSUNG C&T AMERICA, INC.,                      :

                        Plaintiff/Counterclaim Defendant,    :

                                                    :           20 Civ. 10348 (JPC)
          -v-                                              :
                                                    :           OPINION AND ORDER

TOMMY BAHAMA GROUP, INC. and TOMMY  :
BAHAMA GLOBAL SOURCING LIMITED,      :

                      Defendants/Counterclaimants.     :

------------------------------------------------------------------X
                                                   :

TOMMY BAHAMA GROUP, INC. and TOMMY  :
BAHAMA GLOBAL SOURCING LIMITED,      :

                        Third-Party Plaintiffs,             :

          -v-                                             :

TB FOOTWEAR LLC and GMI USA CORP.,    :

                        Third-Party Defendants.           :

------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       In the summer of 2016, the parties in this case entered into agreements governing the manufacture, sale, and distribution of footwear bearing Tommy Bahama marks. Tommy Bahama Group, Inc. and Tommy Bahama Global Sourcing Limited (collectively, "Tommy Bahama") first granted TB Footwear a license to manufacture shoes with Tommy Bahama marks, with GMI USA Corp. ("GMI") as TB Footwear's guarantor. A few weeks later, Tommy Bahama, TB Footwear, and Samsung C&T America, Inc. ("Samsung") entered into an agreement authorizing Samsung to

provide various services to TB Footwear, including the sale of shoes with those Tommy Bahama marks.

These business relationships soon fell apart, however.  In July 2020, Tommy Bahama terminated its licensing agreement with TB Footwear, accusing TB Footwear of failing to pay required royalties.  Samsung then sued Tommy Bahama, alleging that Tommy Bahama failed to pay for shoes that Samsung provided to Tommy Bahama.  Tommy Bahama responded with counterclaims against Samsung and a third-party complaint against TB Footwear and GMI, primarily alleging breach of contract.  Samsung now moves for partial judgment on the pleadings, seeking dismissal of the bulk of Tommy Bahama's counterclaims.  For reasons that follow, Samsung's motion is denied.

## I. Background

A. Facts[1]

### 1. The Authorization Agreement

On July 25, 2016, Tommy Bahama and TB Footwear entered into the License Agreement, which granted TB Footwear a nontransferrable and exclusive license to manufacture, advertise, sell, and distribute shoes featuring Tommy Bahama marks. Counterclaims ¶ 121; License Agreement at 7-8.[2]  Such products were referred to as the "Licensed Products" in

---

[1] The Court draws these facts from Tommy Bahama's Counterclaims, Dkt. 10 ¶¶ 116-164 ("Counterclaims"); the trademark license agreement between Tommy Bahama and TB Footwear, which was attached as an exhibit to the Declaration of Melissa Carvalho, Dkt. 37-1 ("License Agreement"); and the trademark authorization agreement with Samsung, which was attached as an exhibit to the Complaint, Dkt. 8 ("Complaint"), Exh. 1 ("Authorization Agreement").  Because no party disputes the authenticity or accuracy of the License Agreement or the Authentication Agreement, and because Tommy Bahama relies heavily on both of those contracts in the Counterclaims, they are "integral" to the Counterclaims and may be considered at this stage.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2] On March 25, 2021, the Court provisionally permitted Tommy Bahama to file the License Agreement in unredacted form under seal, with a redacted version filed on the public docket, after

the License Agreement. *Id.* at 7. GMI guaranteed TB Footwear's fulfillment of the License Agreement. Dkt. 10 ¶¶ 174-177.

On August 10, 2016, Samsung, Tommy Bahama, and TB Footwear signed the Authorization Agreement. Counterclaims ¶ 122; Authorization Agreement at 3. The third paragraph of the Authorization Agreement ("Paragraph Three") describes Samsung's limited authorization to engage in certain services relating to footwear with Tommy Bahama marks. Authorization Agreement at 1-2. The authorizations included (1) financing the manufacturing of, (2) purchasing, (3) importing, (4) selling, (5) distributing, and (6) invoicing Licensed Products to the "Normal Channels of Distribution" based on orders submitted by TB Footwear. *Id.* at 1. The License Agreement defined the Normal Channels of Distribution to include "better department stores, specialty stores and other retailers which maintain the superior reputation, quality control standards and public image of the TOMMY BAHAMA Marks." License Agreement at 10. While the License Agreement listed more than forty pages of retailers as Normal Channels of Distribution, Tommy Bahama itself was not one of them. Counterclaims ¶ 133. The License Agreement required TB Footwear to obtain approval from Tommy Bahama before accepting an order for a Licensed Product from a prospective customer that was not among the Normal Channels of Distribution. License Agreement at 10.

---

applying governing standards in the Second Circuit as set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Dkt. 42 at 2. In doing so, the Court found that the redactions requested by Tommy Bahama were not relevant to the disposition of Samsung's motion for partial judgment on the pleadings and contained confidential and sensitive commercial information. *Id*. The Court noted that it would make a final determination as to whether to maintain those public redactions and the sealed filing of the unredacted License Agreement when it decides Samsung's motion. *Id.* The Court finds herein that continued redacted and sealed treatment of the document is appropriate under *Lugosch* for the same reasons stated in its March 25, 2021 Order.

In the event that Tommy Bahama terminated the License Agreement, the Authorization Agreement "entitled [Samsung] to sell its then-existing inventory of Licensed Products . . . for a period of one hundred twenty (120) days after the effective date of such termination . . . (the 'Sell-Off Period')." Authorization Agreement at 2. The Sell-Off Period would be "[i]n accordance with and subject to . . . Sections 20.3 and 20.4 of the License Agreement." *Id.*[3] Further, if (1) the License Agreement was terminated and (2) TB Footwear was not permitted to sell its remaining inventory during the Sell-Off Period under the License Agreement, Samsung's permission to do so would be "conditioned on [] [Samsung] providing prior written notice to [Tommy Bahama] of its exercise of the Sell-Off Period rights" and "timely payment of all Earned Royalties (as contemplated pursuant to . . . the License Agreement) due in respect of the Net Sales of Remaining Inventory . . . during the Sell-Off Period." *Id.*

The fifth paragraph of the Authorization Agreement ("Paragraph Five") further explained the division of certain obligations among the signatories. *Id.* It stated that TB Footwear "remain[ed] responsible for the performance of all of its duties and obligations under the License Agreement according to its terms, including without limitation payment of royalties." *Id.* With respect to Samsung, the paragraph confirmed that Samsung was not "required to pay [Tommy Bahama] any Guaranteed Royalty or any other amount due to [Tommy Bahama] from [TB Footwear] under the License Agreement, except the Earned Royalty on any sales of Remaining Inventory during the Sell-Off Period." *Id.*

---

[3] While there are no allegations in the Counterclaims as to what is covered by Sections 20.3 and 20.4 and those provisions have been redacted in the publicly filed version of the License Agreement, Samsung's brief in support of its motion maintains that Section 20.3 concerns "payment of Royalties by Samsung during the Sell Off Period" and Section 20.4 concerns "removal and returning to Tommy Bahama of all Tommy Bahama marks, including labels, from merchandise remaining in Samsung's inventory more than six months after termination of the License Agreement." Motion at 11.

**2. The Disputes**

Before long, these relationships went sour.[4] On July 17, 2020, Tommy Bahama terminated the License Agreement with TB Footwear and GMI, and notified Samsung in writing of that termination. Counterclaims ¶ 125; *see also* Dkt. 40-6 ("Termination Notice"). Under the terms of the Authorization Agreement, this termination of the License Agreement also terminated the Authorization Agreement. Authorization Agreement at 1 (granting Samsung the limited right and authorization through "the earlier of (i) the expiration or termination of the License Agreement, (ii) the expiration or termination of [Samsung]'s business agreement with [TB Footwear] or (iii) written notice from [Tommy Bahama] of revocation of the right and authorization granted hereunder"). Tommy Bahama alleges that, pursuant to the Authorization Agreement, Samsung was then permitted to sell is existing inventory of licensed products for the next 120 days, as long as Samsung provided prior written notice to Tommy Bahama of its exercise of the Sell-Off Period rights and timely payments of all earned royalties from those sales. Counterclaims ¶¶ 127-128; *see* Authorization Agreement at 2. Yet, according to Tommy Bahama, Samsung failed to pay the royalties and continued to sell inventory beyond the permitted 120-day period. Counterclaims ¶¶ 129-130.

Tommy Bahama further alleges that Samsung and TB Footwear sold Tommy Bahama-branded products to Tommy Bahama itself. *Id.* ¶ 131. This, according to Tommy Bahama, was not allowed, because the Authorization Agreement allowed Samsung to sell Licensed Products only to the Normal Chains of Distribution listed in the License Agreement, which did not include Tommy Bahama. *Id.* ¶¶ 132-135.

---

[4] Further details of Samsung's allegations in the Complaint against Tommy Bahama, *see generally* Complaint, and Tommy Bahama's allegations in the Third-Party Complaint against TB Footwear and GMI, *see generally* Dkt. 10 ¶¶ 165-204, are not relevant to this motion.

Maintaining that the Authorization Agreement incorporated the License Agreement, Tommy Bahama also alleges that Samsung committed several breaches of the License Agreement prior to the termination of that agreement. In 2017, Samsung produced, marketed, or distributed Tommy Bahama-branded products that were not approved by Tommy Bahama or that were sold in unapproved packaging. *Id.* ¶ 139. In 2018, Samsung sold in-season, Tommy Bahama-branded products to unauthorized retailers, overcharged for products sold by TB Footwear/GMI to Tommy Bahama itself, and produced, marketed, or distributed unauthorized Tommy Bahama-branded products. *Id.* ¶ 140. And in 2019, Samsung continued to sell Tommy Bahama-branded products to unauthorized retailers. *Id.* ¶ 141.

**B. Procedural History**

On December 8, 2020, Samsung filed suit against Tommy Bahama. Dkt. 1. On December 23, 2020, Tommy Bahama answered, counter-claimed with two causes of action against Samsung, and filed a third-party complaint against TB Footwear and GMI. Dkt. 10. The First Cause of Action in the Counterclaims pleads that Samsung breached the Authorization Agreement by failing to pay royalties from the Sell-Off Period, selling Tommy Bahama-branded products beyond the Sell-Off Period, and selling Tommy Bahama-branded products outside of the designated Normal Channels of Distribution. Counterclaims ¶¶ 142-152. The Second Cause of Action alleges that the Authorization Agreement incorporated the License Agreement's requirements, which Samsung breached between 2017 and 2020 for the reasons summarized above. *Id.* ¶¶ 153-164.

On March 10, 2021, Samsung moved for partial judgment on the pleadings with respect to those Counterclaims. Dkt. 31. Samsung primarily attacks Tommy Bahama's premise that Samsung was bound by the License Agreement, and contends that Samsung's sole obligation was to pay certain royalties to Tommy Bahama during the Sell-Off Period. Dkt. 41 ("Motion") at 1-2.

Samsung thus maintains that only the portion of Tommy Bahama's Counterclaims relating to the payment of royalties from the Sell-Off Period should survive. *Id.* at 2. Samsung further moves to sever Tommy Bahama's claims against TB Footwear and GMI if its motion is granted. *Id.* at 16. Tommy Bahama has filed an opposition, Dkt. 45 ("Opposition"), and Samsung has filed a reply brief, Dkt. 46 ("Reply").

## II. Legal Standards

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a Rule 12(c) motion, [a court] employ[s] the same standard applicable to dismissals" pursuant to Federal Rule of Civil Procedure 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citation and quotations omitted). In doing so, a court "accept[s] all factual allegations in the [counterclaims] as true and draw[s] all reasonable inferences in [the non-movant's] favor. To survive a Rule 12(c) motion, [the non-movant's counterclaims] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citations and quotations omitted).

The Authorization Agreement specified that it "shall be governed by, and construed in accordance with, the laws of the State of New York." Authorization Agreement at 3. There are four elements to a breach of contract claim under New York law: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

"Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996)). A court must first determine if a contractual provision is ambiguous. *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*,

7

252 F.3d 608, 616 (2d Cir. 2001). "[U]nless for some reason an ambiguity must be construed against the [non-movant], a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004)).

"An ambiguity exists where the terms of [a contract] could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)). No ambiguity exists where the contract language has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (citation, alteration, and quotations omitted).

In interpreting a contract, a court must consider "the provisions of the contract as a whole," and cannot "view sentences or clauses in isolation." *Int'l Klafter Co. v. Cont'l Cas. Co.*, 869 F.2d 96, 99 (2d Cir. 1989). "[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency," *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000), and to avoid "adopting an interpretation that would render any individual provision superfluous," *Law Debenture Tr. Co. of N.Y.*, 595 F.3d at 468 (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002)).

### III. Analysis

Samsung argues that Tommy Bahama's Counterclaims are defective for three reasons. First, Samsung was not bound to most of the terms of the License Agreement that Tommy Bahama attempts to enforce. Motion at 6-13. Second, Paragraph Five of the Authorization Agreement exculpates Samsung for any damages owed to Tommy Bahama except for those related to the Sell-Off Period. *Id.* at 13-15. And third, in Tommy Bahama's letter notifying Samsung of the termination of the License Agreement, Tommy Bahama acknowledged that TB Footwear, rather than Samsung, caused any pre-termination damages. *Id.* at 15-16. Samsung claims that all three defects require the dismissal of the portions of the Counterclaims stemming from conduct that occurred before the Authorization Agreement's conclusion. *Id.* at 13, 15-16.

**A. Incorporation by Reference**

Samsung first argues that the Authorization Agreement did not create any obligations for Samsung concerning the sale of the Licensed Products under the License Agreement. Motion 6-13; *see* Counterclaims ¶ 156 (pleading that "the Authorization Agreement require[d] Samsung to exercise its rights in accordance with the applicable terms of the License Agreement"). Tommy Bahama responds that the Authorization Agreement incorporated all obligations of the License Agreement by reference, and thus Samsung was bound by the License Agreement's terms. *See* Opposition at 12.

"To determine whether a contract has incorporated a document by reference, courts look to whether a reasonable person would understand the specific document to be incorporated." *Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 517 (S.D.N.Y. 2018) (citing *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993)). "Courts consider two factors in making this determination: (1) whether the allegedly

incorporated document is expressly identified . . . beyond all reasonable doubt[;] . . . and (2) whether the language incorporating the document clearly communicates that the purpose of the reference is to incorporate the referenced material." *Id.* (citations, quotations, and alterations omitted); *accord Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 341 (S.D.N.Y. 2019). In short, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (citation and quotations omitted). A contract also may incorporate only part of a different document by reference. *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 585-86 (S.D.N.Y. 2018).

The Authorization Agreement repeatedly referred to certain terms of the License Agreement. *See generally* Authorization Agreement. While Samsung acknowledges this, it maintains that the Authorization Agreement falls short of clearly communicating an intent to bind Samsung to *all* of the License Agreement's obligations. *See* Reply at 2. And while Tommy Bahama points to various references to the License Agreement in the Authorization Agreement, many of those references—such as mentions of the mere existence of the License Agreement, the possibility of termination of the License Agreement, and the obligations of TB Footwear and Tommy Bahama under the License Agreement, *see* Opposition at 13-14—do not manifest an intent to bind Samsung to all of the License Agreement's terms.

As Samsung recognizes, though, Paragraph Three of the Authorization Agreement is a "possible basis" for subjecting Samsung to the License Agreement. Motion at 8. Paragraph Three provided:

> In consideration of the benefits [Tommy Bahama] expects to receive in connection with its ongoing relationship with [TB Footwear] under the License Agreement, [Tommy Bahama] hereby grants to [Samsung] the limited right and authorization until . . . the expiration or termination of [Samsung's] business agreement with [TB Footwear] or . . . written notice from [Tommy Bahama] of revocation of the right and authorization granted hereunder, to finance the manufacture of, purchase,

> import, sell, distribute, and invoice Licensed Products to the Normal Channels of Distribution within the Territory, solely based on orders submitted by [TB Footwear], *in accordance with the applicable terms of the License Agreement*.

Authorization Agreement at 1 (emphasis added).  Thus, if Samsung's activities pursuant to "the right and authorization granted" in the Authorization Agreement must have been "in accordance with the applicable terms of the License Agreement," the License Agreement regulated Samsung's conduct.  *Id.*

To avoid that result, Samsung argues that "in accordance with the applicable terms of the License Agreement" modified not the "right and authorization granted," nor the laundry list of permissible activities, but only the "orders submitted by the Licensee."  Motion at 8.  In other words, the language allegedly required *TB Footwear* to comply with the License Agreement when submitting orders, rather than requiring *Samsung* to comply with the License Agreement when fulfilling orders.  But none of Samsung's arguments show that its interpretation is unambiguously correct, which it must establish to prevail at this stage.

First, Samsung points out that "orders submitted by [TB Footwear]" immediately precedes "in accordance with the applicable terms of the License Agreement."  Motion at 8.  But the two phrases are separated by a comma.  And "[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all of the antecedents instead of only to the immediately preceding one."  *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020) (Barrett, J.) (quoting William N. Eskridge Jr., INTERPRETING LAW: A PRIMER ON HOW TO READ STATUTES AND THE CONSTITUTION 67-68 (2016)); *accord Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 781-82 (2d Cir. 2013); *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1000 (9th Cir. 2017) (collecting cases).  If the drafter intended to limit the License Agreement's applicability to TB Footwear's orders, they should have left out the comma.  *See Am. Int'l Grp.*,

712 F.3d at 782.  For example, as Judge Leval observed in *American International Group*, "the statement, 'This basketball team has a seven-foot center, a huge power forward, and two large guards, who do spectacular dunks,' differs from the statement, 'This basketball team has a seven-foot center, a huge power forward, and two large guards who do spectacular dunks.'  The first statement conveys that all four players do spectacular dunks. The latter statement conveys that only the guards do so." *Id.*  While "[p]unctuation is a most fallible standard by which to interpret a writing," "a legal instrument cannot be found to have a 'clear meaning' without taking [it into] account," impeding Samsung's attempt at clarity.  *Baez v. New York City Hous. Auth.*, 533 F. Supp. 3d 135, 145 (S.D.N.Y. 2021) (quoting first *Ewing's Lessee v. Burnet*, 36 U.S. 41, 54 (1837), then Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 162 (2012)).

Second, Samsung contrasts the language in Paragraph Three with the language governing the Sell-Off Period.  Motion at 8-11.  The Authorization Agreement stated that sales in the Sell-Off Period had to be "[i]n accordance with *and subject to* the applicable provisions set forth in Sections 20.3 and 20.4 of the License Agreement."  Authorization Agreement at 2 (emphasis added).  On the other hand, Paragraph Three lacked the "and subject to" language.  *Id.* at 1.  According to Samsung, the "and subject to" language was needed to create an obligation to comply with the License Agreement.  Motion at 8-9.  But Samsung's own interpretation of the clause is inconsistent with this argument.  Samsung argues not that the language at the end of Paragraph Three obligated nobody, but that it obligated only Tommy Bahama to submit orders in compliance with the License Agreement.  Motion at 8.  Indeed, it is hard to see what the clause could mean if it did not require *someone* to comply with the License Agreement, even if which party it bound

remains less clear. The lack of "and subject to" in Paragraph Three thus does little to help Samsung's argument.

Finally, both parties appeal to the business purpose of the deal to support their interpretations. *See* Motion at 11-14; Opposition at 15-16. Consideration of those arguments is premature on a Rule 12(c) motion. Samsung must show that Paragraph Three *unambiguously* favors its position. The Court decides whether a contract is ambiguous "with reference to the contract alone," using "the terms expressed in the instrument itself rather than . . . extrinsic evidence." *Waldman ex rel. Elliott Waldman Pension Tr. v. Riedinger*, 423 F.3d 145, 149 (2d Cir. 2005) (citations and quotations omitted). Inquiry into the parties' intentions in light of their bargaining and business practices is only appropriate if the contract is ambiguous, and thus cannot be done at this stage.

Because Paragraph Three, at a minimum, is ambiguous as to whether Samsung was bound by all terms of the License Agreement, Samsung's argument fails. The question of whether Tommy Bahama's or Samsung's interpretation of the Authorization Agreement is correct remains to be resolved in this litigation.

**B. Exculpation Clause**

Samsung also seeks dismissal by arguing that Paragraph Five of the Authorization Agreement exculpates it for any liability it could owe to Tommy Bahama. Motion at 13-15. As summarized above, Paragraph Five stated:

> For avoidance of doubt, [TB Footwear] shall at all times remain responsible for the performance of all of its duties and obligations under the License Agreement according to its terms, including without limitation payment of royalties . . . and [Samsung] shall not be required to pay [Tommy Bahama] any Guaranteed Royalty

13

>
> or any other amount due to [Tommy Bahama] from [TB Footwear] under the License Agreement, except the Earned Royalty on any sales of Remaining Inventory during the Sell-Off Period.

Authorization Agreement at 2.

Paragraph Five thus primarily established three things. First, TB Footwear was required to comply with the License Agreement, regardless of the execution of the Acknowledgment Agreement, particularly as to its payment of royalties on Samsung's sales. Second, Samsung was not obligated to pay any royalties or other amounts that TB Footwear owed to Tommy Bahama under the License Agreement. But third, an exception applied when the contracts allowed Samsung, but not TB Footwear, to sell inventory during the Sell-Off Period. In those circumstances, Samsung was required to pay royalties to Tommy Bahama.

Significant, however, is what Paragraph Five did not address. It required Tommy Bahama to pay for breaches of the License Agreement by Tommy Bahama, and Samsung to pay for breaches by Samsung during the Sell-Off Period, but said nothing about breaches of the License Agreement by Samsung outside of the Sell-Off Period. But those are the claims that Samsung seeks to have dismissed. As a result, Samsung's argument that Paragraph Five requires partial dismissal of the Counterclaims fails.

C. Causation

Finally, Samsung argues that TB Footwear, not Samsung, caused any pre-termination damages suffered by Tommy Bahama. Motion at 15-16. In support, Samsung has submitted what it claims is Tommy Bahama's written notice of termination of the License Agreement, sent to TB Footwear and GMI on July 17, 2020. *See* Termination Notice. Among other things, the Termination Notice advised that Tommy Bahama had "not received payment in satisfaction of the outstanding amounts due to Tommy Bahama," and provided formal notice of the License

Agreement's immediate termination. *Id.* at 1. Samsung argues that this letter contradicts Tommy Bahama's causation allegations as to Samsung. Motion at 15-16.

The first issue is whether the Court can even consider the Termination Notice. Samsung relies on *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011), in which the Second Circuit considered emails attached to counterclaims, but only because the documents "were 'integral' to the negotiation exchange that [was] . . . the basis for [the] Complaint," and should in fairness have been attached to that complaint, *id.* at 422. While the Termination Notice is referenced in the Counterclaims, *see* Counterclaims ¶ 125, it is not clear that the terms and effect of the Termination Notice are so heavily relied upon in Tommy Bahama's pleading to render it "integral" to the Counterclaims. *See DiFolco*, 622 F.3d at 111.

But even assuming *arguendo* that it is appropriate for the Court to consider the Termination Notice at this stage, it does not entitle Samsung to partial judgment. While the Termination Notice informed TB Footwear and GMI that Tommy Bahama viewed them to be in breach of the License Agreement, *see* Termination Notice at 1-2, it did not say that Samsung was not in breach. And even if at the time of the July 17, 2020 letter Tommy Bahama only viewed TB Footwear and GMI as in breach, Tommy Bahama could have later decided that Samsung also should face liability, especially after further consultation with counsel and investigation. *See* Opposition at 20. Thus, even if considered, the Termination Notice does not contradict the Counterclaim's causation allegations such that the Court must reject them.

## IV. Conclusion

For the foregoing reasons, Samsung's motion for partial judgment on the pleadings is denied. Its motion for severance also is denied as moot.[5] The Court's provisional Order of March 25, 2021 permitting the sealed filing of an unredacted version of the License Agreement and the public filing of a redacted version of that document, Dkt. 42, shall remain in effect until further order of the Court. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 39.

SO ORDERED.

Dated: January 26, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[5] As noted, Samsung only sought severance in the event that the Court granted its motion and dismissed the Counterclaims' First Cause of Action as to conduct that predated termination of the License Agreement and Second Cause of Action. *See* Motion at 16-18.